**THIS DISPOSITION IS CITABLE
AS PRECEDENT OF THE TTAB**

Hearing:                                    Mailed:
July 20, 2005                               September 19, 2005

**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

In re KRB Seed Company, LLC[1]
_____

Serial No. 76289621
_____

Howard A. MacCord, Jr. of MacCord Mason PLLC for KRB Seed
Company, LLC.

Samuel E. Sharper, Jr., Trademark Examining Attorney, Law
Office 108 (David Shallant, Managing Attorney).[2]
_____

Before Bucher, Drost and Kuhlke, Administrative Trademark
Judges.

Opinion by Kuhlke, Administrative Trademark Judge:

KRB Seed Company, LLC has filed an application to

register the mark REBEL in standard character form for

"grass seed."[3]

_____

[1] United States Patent and Trademark Office (USPTO) assignment
records reflect that the current owner of the application is
Pennington Seed, Inc., at Reel/Frame No. 3113/0239.  According to
the records, the assignment was executed on December 9, 2004.

[2] During the course of prosecution, this application was
reassigned to the above-noted examining attorney.

[3] Application Serial No. 76289621, filed July 25, 2001, alleging
a date of first use anywhere and date of first use in commerce of
August 21, 1980.

The examining attorney has refused to register the applied-for mark on the ground that it is a varietal (or cultivar) name for applicant's grass seeds and because varietal or cultivar names are generic designations and cannot be registered as trademarks. Sections 1, 2 and 45 of the Trademark Act. 15 U.S.C. §§ 1051, 1052, and 1127.[4] When the refusal was made final, applicant appealed to this Board. Thereafter, the application was remanded to the examining attorney upon his request to address applicant's assertion of acquired distinctiveness under Section 2(f) of the Trademark Act. The examining attorney refused the registration sought under Section 2(f). When that refusal was made final, the appeal to this Board was resumed. Applicant and the examining attorney have filed briefs, and an oral hearing was held on July 20, 2005.[5]

*Examining Attorney's Arguments and Evidence*

In maintaining his refusal, the examining attorney argues that "varietal (or cultivar) names are generic designations and cannot be registered as trademarks." Brief p. 3. Further, the examining attorney argues that

---

[4] The first office action included a reference to a prior pending application, which has been abandoned as acknowledged by the examining attorney in the second office action.

[5] The oral hearing for this application was combined with the oral hearing for a related case (Serial No. 76318939, for the

2

the terms "varietal and cultivar are used to mean the same thing" (brief p. 3) and the record shows that "the term 'REBEL' is a varietal or cultivar name for grass and grass seed." Brief p. 4. Finally, the examining attorney argues that applicant's evidence of secondary meaning cannot overcome a generic/varietal refusal. Brief p. 7. However, the examining attorney states, in the alternative, that if the proposed mark "is determined not to be generic and does function as a mark, the mark should be considered inherently distinctive, because it's not descriptive as a matter of normal semantics" and further that applicant's "claim of acquired distinctiveness is noted and acknowledged by the [examining attorney], if the Board determines that the mark is not generic and does function as a mark." Brief p. 8.

In support of his refusal, the examining attorney has made of record photocopies of the relevant pages from the following: (1) excerpts of articles from a variety of sources retrieved from the DIALOG database wherein REBEL is used in connection with grass seed; (2) an excerpt from the Germplasm Resources Information Network web server which is maintained by a unit of the United States Department of

---

mark REBEL IV, for grass seed) which will be determined in a separate decision.

3

Agriculture's Agricultural Research Service wherein REBEL is listed as a cultivar name for tall fescue; (3) excerpts from the database maintained by the International Union for the Protection of New Varieties of Plants (UPOV) listing REBEL as the "denomination" of a tall fescue variety; (4) an excerpt from a listing on plant varieties kept by the Seed Regulatory and Testing Branch of the United States Department of Agriculture; and (5) excerpts of articles from a variety of sources retrieved from the Google search engine.

In view of this evidence, the examining attorney maintains that REBEL is a varietal name for grass seed and, thus, generic and unregistrable.

*Applicant's Arguments and Evidence*

Applicant states in its March 21, 2002 response to the office action that "the mark has been used as a varietal name" and that "[t]he seed has been the subject of a plant variety protection certificate." Response p. 3. Applicant argues, however, that the USPTO's treatment of varietal names as generic and unregistrable is "wrong, dated and inconsistent with modern intellectual property law." Brief p. 2. Specifically, applicant argues that the USPTO has not correctly applied the seminal case Dixie Rose Nursery v. Coe, 131 F.2d 446, 55 USPQ 315 (D.C. Cir. 1942), cert.

4

denied 318 U.S. 782, 57 USPQ 568 (1943).  Applicant argues that Dixie Rose requires consideration of two elements before finding that "an initially arbitrary name has become a generic term":  (1) the term must be "applied, for a considerable period, to all such combinations and to nothing else"; and (2) the term's meaning must be the "impression and signification" the term "convey[s] to the public."  Brief p. 3.

Further, applicant argues that case law in other areas of intellectual property indicates that a "per se rule prohibiting trademark protection, simply because an applicant procured another form of intellectual property protection, no longer applies to design patents, utility patents, or copyrights."  Therefore, applicant argues, plant variety protection should also not act as a per se bar to trademark protection.  Applicant particularly relies on Traffix Devices, Inc. v. Marketing Displays, Inc., 532 U.S. 23, 58 USPQ2d 1001 (2001), arguing that the Court in Traffix found that patented features carry a rebuttable presumption of functionality, thus, an applicant has the possibility of rebutting the presumption.

In support of its position, applicant submitted printouts from the Trademark Electronic Search System (TESS) of third-party applications and registrations for

the mark REBEL; printouts of various websites displaying REBEL in connection with grass seed; and a declaration by Kenneth R. Budd, applicant's member/manager.

*Analysis and Decision*

Applicant admits that its proposed mark, REBEL, is a varietal name for a type of grass seed that was the subject of a plant variety protection certificate. In any event, the evidence submitted by the examining attorney establishes that REBEL is a varietal name for grass seed. Therefore, the sole issue before this Board is whether the USPTO's application of prior case law and resulting policy treating varietal names as generic terms is valid. We believe it is, and the refusal of registration is affirmed.

The USPTO, including the Board, has treated varietal names as generic designations for several decades. See In re Delta and Pine Land Co., 26 USPQ2d 1157, 1159 n. 4 (TTAB 1993) (varietal names are generic designations and cannot be registered as trademarks) and cases cited therein. As noted in the Trademark Manual of Examining Procedure, "if the examining attorney determines that wording sought to be registered as a mark for live plants, agricultural seeds, fresh fruits or fresh vegetables comprises a varietal or cultivar name, then the examining attorney must refuse registration, or require a disclaimer, on the ground that

6

the matter is the varietal name of the goods and does not function as a trademark." TMEP §1202.12. The basis for this examination policy is rooted in prior Board case law. See Delta and Pine Land Co., 26 USPQ2d 1157; In re Hilltop Orchards & Nurseries, Inc., 206 USPQ 1034 (TTAB 1979); In re Farmer Seed & Nursery Co., 137 USPQ 231 (TTAB 1963); and In re Cohn Bodger & Sons Co., 122 USPQ 345 (TTAB 1959).

With regard to applicant's argument that the USPTO has incorrectly applied Dixie Rose, contrary to applicant's assertion, this case did not set forth a particular test. At issue in Dixie Rose was the application for trademark registration of TEXAS CENTENNIAL for a type of rose. The court essentially noted it was a varietal name and the "Patent Office and the District Court might properly conclude that the words 'Texas Centennial,' though originally arbitrary, have come to describe to the public a rose of a particular sort" and the "statute forbids the registration" of such words. Applicant relies on the following passage from the Dixie Rose case in arguing for a two prong test:

> If a man should invent a combination automobile
> and airplane, and call it an ambi, the name would
> at first be arbitrary and not descriptive. But if
> the name were applied, for a considerable period,
> to all such combinations and to nothing else, the
> name would come to identify or describe the
> thing, as the word "cellophane" [citation

7

omitted] has come to describe a thing. "The meaning which should be given to the words constituting the mark is the impression and signification which they would convey to the public." [citation omitted] The Patent Office and the District Court might properly conclude that the words "Texas Centennial," though originally arbitrary, have come to describe to the public a rose of a particular sort, not a rose from a particular nursery.

Dixie Rose, 55 USPQ at 316.

This passage goes beyond the facts of the Dixie Rose case and is merely an illustration or analogy presented by the court, i.e., dictum.

With regard to applicant's argument that Traffix has modified "the harsh rule of early cases such as In re Farmer Seed and Nursery Co., 137 USPQ 231 (TTAB 1963)," the decision in Traffix does not provide real support for applicant's point and it provides an analogy that indicates that a varietal name is generic. In Traffix the Court stated:

A utility patent is strong evidence that the features therein claimed are functional. If trade dress protection is sought for those features the strong evidence of functionality based on the previous patent adds great weight to the statutory presumption that features are deemed functional until proved otherwise by the party seeking trade dress protection. Where the expired patent claimed the features in question, one who seeks to establish trade dress protection must carry the heavy burden of showing that the feature is not functional, for instance by

8

showing that it is merely an ornamental, incidental, or arbitrary aspect of the device.

<u>Traffix</u> at 29.

<u>Traffix</u> dealt with the existence of a utility patent as evidence of functionality. In the case of varietal names, plant variety protection certificates are issued. As noted by applicant, the grass seed sold under the REBEL name was the subject of a plant variety protection certificate and REBEL was the given name. As shown by the evidence, this certificate issued on May 14, 1981 and expired on May 14, 1999. (Excerpt from UPOV-ROM database made of record by the examining attorney.) The plant variety protection program is implemented by the United States Plant Variety Protection Office. Section 52 of the Plant Variety Protection Act (§7 U.S.C. 2422) (PVPA) requires, inter alia, that the applicant provide a name for the new variety in order to receive a Plant Variety Protection Certificate. This requirement is certainly not "an ornamental, incidental, or arbitrary aspect" of the certification, but is a necessary element, showing that the name of the varietal is in the nature of a generic term. Thus, the USPTO's position on the unregistrability of varietal names is supported by the PVPA, which was enacted in 1970, after the <u>Dixie Rose</u> decision.

9

Moreover, the United States is a member of the International Convention for the Protection of New Varieties of Plants (UPOV) and adheres to the 1991 text of UPOV, which is implemented by, inter alia, the United States Plant Variety Protection Office.  MPEP Section 1612 (8th ed. rev. 2004); 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, §12:36 (4th ed. 2005).[6] Chapter VI Article 20 of UPOV, as revised in 1991, provides:

> (1)(a) The variety shall be designated by a denomination, which will be its generic designation.  (b) Each Contracting Party shall ensure that, subject to paragraph (4), no rights in the designation registered as the denomination of the variety shall hamper the free use of the denomination in connection with the variety, even after the expiration of the breeder's right...

> (7) Any person who, within the territory of one of the Contracting Parties, offers for sale or markets propagating material of a variety protected within the said territory shall be obliged to use the denomination of that variety, even after the expiration of the breeder's right in that variety, except where, in accordance with

---

[6] Although applicant cited to a different section of the McCarthy treatise, the section quoted below is more on point:
> In 1981 the Convention of the International Union for the Protection of New Plant Varieties (UPOV) became applicable to the United States.  Article 1 of the UPOV provides that a new plant variety shall be designated by a denomination destined to be its generic designation and member states will ensure that no rights in the name "shall hamper the free use of the denomination in connection with the variety, even after the expiration of the [plant patent] protection.

2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, §12:36 (4th ed. 2005).

the provisions of paragraph (4), prior rights prevent such use.

(8) When a variety is offered for sale or marketed, it shall be permitted to associate a trademark, trade name or other similar indication with a registered variety denomination. If such an indication is so associated, the denomination must nevertheless be easily recognizable.

International Convention for the Protection of New Varieties of Plants Convention: 1991 Act, (available at www.upov.int/en/ publications/conventions /1991/act1991.htm.)

Chapter IX Article 30 provides, in relevant part:

It shall be understood that upon depositing its instrument of ratification, acceptance, approval or accession, as the case may be, each State or intergovernmental organization must be in a position, under its laws, to give effect to the provisions of this Convention.

Id.

Thus, the policy of the USPTO is in accord with the PVPA, UPOV and case law since 1942, all of which codify and implement the common sense notion that when a new plant is created it must be called something, and that when others begin to sell it after expiration of the breeder's protection period they need to call it by the name that it is known or otherwise consumers will not know what they are buying.[7] Indeed, the use

---

[7] In this regard, applicant's argument that competitors have alternative names for the grass seed, specifically, the Latin name "festuca arundinacea" merely underscores why the varietal name is the common or generic term of the goods. This argument

11

of a different term in connection with a particular variety could be deceptive, hence, the requirement under Article 7 of UPOV that persons offering the variety for sale even after expiration of the "breeder's right" *must* use the denomination (varietal name) of that variety.

Therefore, inasmuch as we reiterate the correctness of the case law that "varietal names are generic designations and cannot be registered as trademarks," Delta and Pine Land Co., 26 USPQ2d at 1158 n. 4, and inasmuch as applicant's proposed mark is a varietal name, we find that it is generic and unregistrable; and applicant's arguments and evidence of acquired distinctiveness cannot overcome

---

was addressed by the Board in In re Hilltop Orchards & Nurseries, Inc., 206 USPQ 1034, 1035 (TTAB 1979):

> Every type of tree or plant in the vegetable kingdom has a specified generic (Latin) name, generally known only to those scientists well versed in the botanical community, and entirely unknown to the average purchaser in the marketplace where such products are sold. What we are concerned with in the present case is the impact which the [varietal name] would have upon the purchaser or the prospective purchaser of apple trees as he encounters such term in the marketing area where such goods are sold, and not its impact upon those scientists especially skilled in the botanical field. The purchaser or prospective purchaser has to have some common descriptive name he can use to indicate that he wants one particular variety of apple tree, rose, or whatever, as opposed to another, and it is the varietal name of the strain which naturally and commonly serves this purpose.

such a finding.  See <u>In re Farmer Seed & Nursery Company</u>,
137 USPQ 231.

**Decision**:  The refusal to register is affirmed.